In re ARGO COMMUNICATIONS
CORPORATION, Debtor.

John S. PEREIRA, Trustee, Plaintiff,

v.

CENTEL CORPORATION, Centel Network Company, Centel Credit Company, and Centel Management Services Company, Defendants.

Bankruptcy No. 87B10020–PBA.
Adv. No. 91–5237.

United States Bankruptcy Court,
S.D. New York.

Dec. 27, 1991.

J.H. Wilkinson, and A.P. Lubitz, Donovan, Leisure, Newton & Irvine, New York City, for Trustee.

P.M. Fishbein, Kaye, Scholer, Fierman, Hays & Handler, New York City and R.J. Rappaport, Ross & Hardies, Chicago, Ill., for Centel Corp., Centel Network Co., Centel Credit Co., and Centel Management Services Co. (Centel).

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

FRANCIS G. CONRAD, Bankruptcy Judge.*

* Sitting by special designation.

This matter [1] came before us on Centel's motions for partial summary judgment and to dismiss Trustee's adversary proceeding brought on behalf of the Debtor, Argo Communications Corporation (Argo).[2] Trustee's complaint [3] alleges breach of fiduciary duty, corporate waste, breach of contract, and negligent and fraudulent misrepresentation stemming from Centel's [4] involvement in the corporate affairs of Argo immediately preceding Argo's application for bankruptcy relief. In addition to these State law causes of action, Trustee requests that we eliminate or equitably subordinate Centel's claims against Argo regarding an alleged lease of communications equipment.

Centel first moves under F.R.Civ.P. 12(b)(6) to dismiss Trustee's first, second, third, and fifth claims for failure to state a claim upon which relief may be granted because Argo's claims are time-barred under New York law. Centel also pleads that, under F.R.Civ.P. 9(b), the fourth count of the complaint should be dismissed for failure to plead fraud with particularity. In the alternative, Centel asks us to grant partial summary judgment to the defendants on portions of the first, fourth, and fifth claims for relief set forth in Trustee's complaint. Finally, Centel moves under F.R.Civ.P. 12(e) for a more definite statement of the seventh claim for relief.

For the reasons expressed below, we deny Centel's 12(b)(6) and summary judgment motions as they pertain to counts one through six. We also deny Centel's motion to dismiss count four under F.R.Civ.P. 9(b), and deny Centel's motion for a more definite statement of claim seven.

## FACTS

The bankruptcy case was commenced on January 7, 1987, when Argo filed for reorganization under Chapter 11 of the Bankruptcy Code. By order of this Court, dated February 11, 1987, the Chapter 11 case was converted to Chapter 7. Trustee was appointed on February 14, 1987.

Trustee filed the present complaint on March 7, 1991, for damages under State law arising out of Centel's breach of fiduciary and other duties owed to Argo, as well as breach of contract, fraudulent misrepresentation, and corporate waste. In his complaint, Trustee also requests that we disallow Centel's claims against the estate under § 502 of the Bankruptcy Code, or equitably subordinate these claims under § 510. Trustee requests compensatory damages of at least $300 million per claim for the first five causes of action and punitive damages of at least $300 million with respect to the sixth claim for relief. Trust-

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. §§ 157(b)(2)(B) and (C). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable to this proceeding by F.R.Bkrtcy.P. 7052.

2. Argo Communications Corporation was a wholly-owned subsidiary of Argo Group, Inc. With one de minimis exception, Argo Communications Corporation constituted the only business conducted by Argo Group, Inc. Argo Communications Corporation and its parent Argo Group, Inc. were founded in 1981 for the purpose of financing and constructing a satellite-based long distance communications network. Argo Group, Inc. and Argo Communications Corporation are collectively referred to herein as "Argo."

3. Trustee brought the above action under F.R.Bkrtcy.P. Rule 7001 to recover damages and obtain equitable relief for the benefit of the Debtor's estate and, concurrently, to disallow or subordinate, under 11 U.S.C. §§ 502 and 510 and parallel State law provisions, Centel's claims asserted against Debtor's estate.

4. Trustee's proceeding names as defendants the parent company, Centel Corporation, and three subsidiaries, Centel Network Company, Centel Credit Company and Centel Management Services Company. For convenience, the complaint refers to all four entities as "Centel." As noted in Centel's brief, this collective reference is somewhat misleading. While we adopt Trustee's collective reference to simplify this opinion, we note that defendant Centel Network Company was the entity which invested in Argo Group, Inc., the parent of the debtor, Argo Communications Corporation. According to Centel's brief, Centel Corporation's subsidiaries had limited involvement with Argo, and Centel Corporation itself had no involvement with Argo.

ee also requests compensatory and punitive damages in the seventh cause of action.

Argo is a Delaware corporation with its principal offices in New Rochelle, New York. Argo developed, constructed, and operated a digitally switched satellite-based communications network that served customers throughout the United States. When it commenced its Chapter 11 reorganization, Argo had installed and operated digital telephone switching systems in ten major cities. Customers in other cities were connected to the Argo network through terrestrial digital facilities provided by other carriers. Argo offered its customers two basic switched service systems that were WATS-like in nature. Argo also offered flat-rate communications services to high volume users.

Centel is a Kansas corporation with its principal offices in Chicago, Illinois. Centel operates local exchange telephone systems involving more than 1.5 million access lines in nine states. Centel also provides cellular telephone service in thirteen states. Centel is a major shareholder in Argo and in several other telecommunications corporations.

The dispute between the parties originates in a failed merger involving Argo and two other telecommunications corporations. Trustee alleges that Centel abused its financial and managerial control over Argo to orchestrate Argo's liquidation prior to the planned merger. According to the complaint, the dispute between the parties began following Centel's initial investment in Argo. After assuring Argo that Centel's goals coincided with Argo's, Centel allegedly induced Argo's founder, Francesco Galesi, to bring Centel in as a shareholder and corporate partner. Trustee alleges that Centel exercised control over Argo from 1983 through 1986 as Argo's dominant shareholder. In the Spring of 1986, Centel proposed a merger of Argo with two other telecommunications companies in which Centel owned an interest: Microtel, Inc. (Microtel) and LCI Communications, Inc. (LCI). Trustee concludes the failure of the proposed merger forced Argo into bankruptcy.

In addition to its investments in Argo, Centel also owned significant percentages of LCI and Microtel. Centel representatives were on the boards of directors of all three of these corporations. Although Centel did not itself hold a majority of the shares of Argo stock, Trustee alleges that it was nonetheless the controlling shareholder of Argo, a private, closely-held corporation that had become financially dependent on Centel. Together with Alltel Corporation, another communications corporation which also held substantial portions of the stock of Argo, LCI, and Microtel, Centel was effectively able to control over 50% of the stock of Argo, LCI, and Microtel.[5] Trustee alleges that Centel's significant holdings in all the merging corporations influenced other shareholders of Argo, thus making Centel's block vote even more controlling than its ownership percentage would indicate.

On August 22, 1986, the boards of directors of Argo, LCI, and Microtel approved an agreement to merge the three companies into a single entity. Centel's merger plans, however, involved the systematic dismantling of Argo. In reliance on Centel's representations of what was necessary to facilitate the merger, Argo surrendered customer lists, fired key employees, and disclosed confidential business information all in preparation for the merger. This dismantling plan created a situation such that if the merger did not take

---

5. As of December 1986, Centel's percentage shareholdings in Argo, Microtel and LCI were as follows:

**Argo:**

| | |
|---|---|
| Common Stock | 25.42% |
| Series A Preferred | 77.71% |
| Series B Preferred | 32.18% |
| Series C Preferred | 54.10% |
| Fully Converted | 41.46% |

**Microtel:**

| | |
|---|---|
| Common Stock | 18.56% |
| Series A Preferred | 100% |
| Series B Preferred | 30.11% |
| Series C Preferred | 33.33% |
| Fully Converted | 22.60% |

**LCI:**

| | |
|---|---|
| Common Stock | 13.76% |
| Preferred | 31.77% |
| Fully Converted | 25.78% |

place, Argo would be unable to survive on its own.

The merger was subject to approval by holders of each class of stock of Argo, LCI, and Microtel. Centel repeatedly recommended the merger to the shareholders of all three companies and stated its intention to vote in favor of the merger as a shareholder in each of the companies. Centel explicitly stated its pro-merger position in a Prospectus and Joint Proxy Statement, dated November 26, 1986, and in an amendment thereto, dated December 12, 1986. The shareholder votes were held on December 19, 1986, one week after the Proxy Statement was amended. Contrary to these representations, however, Centel voted its shares against the merger. Without Centel's support, the merger was not approved.

From the facts alleged, Trustee questions Centel's allegiance to Argo's best interests in light of Centel's additional investments in Microtel and LCI. Trustee argues that this conflict of interest allegedly prevented Centel from acting in the best business interests of Argo. When Centel withdrew its support for the merger at the eleventh hour, Argo was little more than a shell corporation and could no longer function as an independent business entity. Soon after the merger plans were abandoned, Argo sought protection from creditors in this court.

Trustee also alleges that Centel profited from the failed merger and Argo's collapse. Following its rejection of the merger, Centel earned substantial profits from Argo's client lists and confidential information that but for the planned merger, Centel would not have had the opportunity to use. In addition, Argo was no longer a business competitor whose services would reduce Centel's market share.

Centel denies that its actions caused Argo's financial collapse. First, Centel argues that nearly all actions mentioned in Trustee's complaint were approved by Argo's board of directors. Centel further

6. Centel did, however, own a substantial percentage of preferred Argo stock. See footnote

argues that it had only two directors on the seven-director board and at no time owned more than 26% of Argo's common stock.[6] Thus, Centel concludes that it was not the dominant shareholder as Trustee alleges. Second, Centel states that it was financially harmed by the failed merger and reported a pre-tax write-off of its investment in Argo of $41.6 million as of December 31, 1986—the largest loss of any Argo shareholder.

## DISCUSSION

Trustee's underlying action is based on the right of a bankruptcy trustee to bring suit against alleged wrongdoers in the name of the debtor and for the benefit of creditors. Once a debtor has filed for bankruptcy relief, a trustee is appointed to maximize the distribution of assets to creditors. The trustee oversees all legal and equitable interests of the debtor as property of the estate. 11 U.S.C. § 541(a)(1). It is a fundamental concept within the Bankruptcy Code that the trustee is empowered to "collect and reduce to money the property of the estate ... [in] the best interest of parties in interest." 11 U.S.C. § 704(1). These words constitute the trustee's main duty to both the debtor and the creditors to realize from the estate all that is possible for distribution among the creditors. 4 *Collier on Bankruptcy*, § 704.01, pp. 704–2, *et seq.* (15th ed.1987).

The hornbook rule of law is that a bankruptcy trustee obtains rights of action belonging to the debtor subject to the same defenses or limitations that a defendant might have asserted against the debtor himself. *In re Giorgio*, 862 F.2d 933, 936 (1st Cir.1988), *citing*, 4 L. King, *Collier on Bankruptcy*, ¶ 541.10[1] (15th ed. 1988); 1 D. Cowans, *Bankruptcy Law and Practice*, § 2.7 (1987). In the present action, Trustee's cause of action is based on a wrong done to the debtor corporation. Title to this cause of action vested in Trustee upon appointment. *Hastings v. H.M. Byllesby & Co.*, 293 N.Y. 413, 417, 57

4, *supra.*

N.E.2d 737, 739, *cert. denied,* 324 U.S. 860, 65 S.Ct. 864, 89 L.Ed. 1417 (1944).

We first turn our attention to Centels's motion to dismiss count one for failure to state a claim. A motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2), which calls for a "short and plain statement" that the pleader is entitled to relief. *See, Wright & Miller Federal Practice and Procedure,* § 1356 at 590 (1982). Under 12(b)(6), a complaint should not be dismissed for failure to state a claim on which relief may be granted unless the plaintiff can prove no set of facts in support of the claim that is entitled to relief. *In re Ahead By A Length, Inc.,* 100 B.R. 157 (Bkrtcy. S.D.N.Y.1989), *citing, Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80, 87 (1957). When reviewing a motion to dismiss, a Court must consider all factual allegations as true and in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 94 (1974). We must also examine the complaint to ascertain whether relief may be granted under any possible theory. *In re Ahead By A Length, Inc., supra,* 100 B.R. at 162; *Raine v. Lorimar Productions, Inc.,* 71 B.R. 450 (Bkrtcy.S.D.N.Y.1987).

■ Centel first moves to dismiss Trustee's claim for breach of fiduciary duty as untimely under New York's law. As a preliminary matter, we note that on a motion to dismiss, Courts should be reluctant to erect the statute of limitations as an insurmountable barrier where the determination turns on circumstances and intentions of the parties not readily ascertainable from the facts. *In re Ahead By A Length, Inc, supra, citing, Abdul–Alim Amin v. Universal Life Insurance Co.,* 706 F.2d 638, 640 (5th Cir.1983). In the current adversary proceeding, Trustee's allegations involving breach of fiduciary duty, corporate waste, and fraud by their very nature cannot be described in vivid detail during the pleading stage. The general requirements of notice pleading, however, make highly detailed allegations unnecessary in our determination of whether Trustee's complaint states a cause of action.

The Bankruptcy Code provides certain rules regarding statute of limitation issues. When a trustee sues in the capacity as the successor to the debtor, 11 U.S.C. § 108(a) affords an extension of time in excess of applicable nonbankruptcy law. If applicable nonbankruptcy law prescribes a statute of limitations, and if the prescriptive period has not expired before the petition date, the trustee may commence the action only before the later of "the end of such period, including any suspension of such period occurring on or after the commencement of the case" or two years after the petition is filed. Section 108 necessitates a two-part analysis: first, we must determine whether any claim that may have existed in favor of the debtor was still maintainable on the petition date under applicable nonbankruptcy law; and second, whether the two-year extension is warranted. *In re Ahead By A Length, Inc., supra,* 100 B.R. at 162.

■ Trustee claims in count one of the complaint that Centel breached its fiduciary duty [7] as a controlling shareholder in Argo. According to Trustee, conduct constituting breach took place between June, 1986 and December 19, 1986. Argo filed its bankruptcy petition on January 7, 1987. The present complaint was filed on March 7, 1991, approximately four years and two months after Argo filed for bankruptcy relief. Clearly, the two-year extension provided in 11 USC § 108(a)(2) has expired. Trustee must therefore rely solely on appli-

---

**7.** A New York Court recently described fiduciary duty in the following manner:

It is elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interest the fiduciary is to protect; this is a sensitive and inflexible rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with an interest of those owed a fiduciary duty.

*Birnbaum v. Birnbaum,* 73 N.Y.2d 461, 541 N.Y.S.2d 746, 539 N.E.2d 574, *reargument denied* 74 N.Y.2d 843, 546 N.Y.S.2d 559, 545 N.E.2d 873 (1989).

cable nonbankruptcy limitations law. As the forum State, New York's relevant limitations periods must thus be applied here in determining whether Trustee's common law claims are time-barred. *Guaranty Trust Co. v. New York*, 326 U.S. 99, 108–09, 65 S.Ct. 1464, 1469–70, 89 L.Ed. 2079 (1945); *Rice v. Baron*, 456 F.Supp. 1361, 1367 (S.D.N.Y.1978).

Trustee cites two six-year limitations periods that apply to his first claim for relief. First, Trustee asks us to apply the six-year statute of limitations period found in CPLR § 213(7). New York CPLR § 213(7), provides in part:

> § 213. **Actions to be commenced within six years:** ... **by corporation against director, officer, or shareholder....**
>
> 7. an action *by or on behalf of a corporation* against a present or former director, officer or stockholder for an accounting, or to procure a judgment on the ground of fraud, or to enforce a liability, penalty or forfeiture, or to recover damages for waste or for an injury to property or for an accounting in connection therewith (emphasis ours).

Trustee argues that the principles of statutory construction and the plain language of the statute support the conclusion that count one is timely. On its face, the statute does not contemplate actions commenced by a bankruptcy trustee *per se.* The use of the language "an action by or on behalf of a corporation," however, indicates the legislature intended that § 213(7) would apply to actions by a corporation and those brought on behalf of a corporation. Thus, the plain meaning of § 213(7) provides that the six-year limitation period applies to actions brought by the corporation itself, and to those brought in the corporation's name, such as a shareholder derivative suit. The legislative history of § 213(7) reiterates the statute's applicability

ty to actions brought both by and on behalf of a corporation.[8]

Trustee cites several cases that arguably support the position that § 213(7) applies to a trustee's actions for breach of fiduciary duty and corporate waste. In *Bartle v. Markson*, 299 F.Supp. 958 (N.D.N.Y.1969), *aff'd*, 423 F.2d 637 (2d Cir.1970), a bankruptcy trustee sued officers and directors of the debtor to recover wrongfully diverted funds. *Bartle* applied the six-year limitation period without elaboration. On appeal, the Second Circuit did not discuss the limitations issue. 423 F.2d at 637–38. Trustee also cites *Stichman v. Fischman*, 154 F.Supp. 867 (S.D.N.Y.1957), as support for applying § 213(7) to the present action. Although *Stichman* applied the limitations period prescribed by CPA §§ 48(8) and 49(7) (the predecessor sections to CPLR 213(7)) to claims asserted by a bankruptcy trustee against the debtor corporation's former officers and directors, the question of whether the statutory language encompassed claims by a bankruptcy trustee was not litigated. There, as in *Bartle, supra,* the statute's applicability to a bankruptcy trustee was merely assumed. Both decisions unfortunately have little value as precedent in the present matter. The cases do, however, show that it is at least reasonable that § 213(7) encompasses the present action by Trustee.

Trustee also argues that the first claim is timely under CPLR § 213(2). CPLR § 213(2) provides a six-year limitations period for "an action upon a contractual liability, express or implied." According to Trustee, Centel breached both express and implied contracts stemming from its relationship with the debtor. As part of the claim for breach of fiduciary duty, Trustee alleges that Centel breached its duty of good faith and fair dealing implicit in the agreements. These agreements included the Stockholder Agreement, Plan of Merger Agreement, and Management Services

---

**8.** See, *Final Report of the Advisory Committee on Practice and Procedure,* January 4, 1961, pg. A–147:

Actions by or on the behalf of a corporation against a present or former director, officer or stockholder to enforce a liability, penalty

or forfeiture or to recover damages for waste or injury to property ... have been transferred to paragraph 8 ... and made subject to the same five [now six] year period applicable to all actions against a director, officer or stockholder of a corporation.

Agreement, all of which are mentioned in some detail in Trustee's complaint and are incorporated by reference in the first claim for relief.

■ Trustee cites several cases that hold that the contract limitations period applies to an action for breach of fiduciary duty where the obligation has its genesis in the contractual relationship between the parties. The leading case in New York regarding the applicability of the six-year limitations period to breach of contract actions is *Sears, Roebuck & Co. v. Enco Assoc., Inc.*, 43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977). In *Sears*, the plaintiffs sued a firm of architects for breach of professional duty arising from the faulty design of a parking ramp. The plaintiffs brought their action four years after the completion of the ramp. Following trial where the breach of duty claim was dismissed as time-barred, the Court of Appeals reversed and held that the claim was timely under the six-year statute of limitations applicable to contract claims for damages to property. Several years later in *Video Corp. v. Frederick Flatto Associates, Inc.*, 58 N.Y.2d 1026, 462 N.Y.S.2d 439, 448 N.E.2d 1350 (1983), the Court of Appeals reiterated its holding in *Sears* stating: "an action for failure to exercise due care in the performance of a contract insofar as it seeks recovery for damages to property or pecuniary interests recoverable in a contract action is governed by the six-year Statute of Limitations...." 58 N.Y.2d at 1028, 462 N.Y.S.2d at 439, 448 N.E.2d at 1350. From these and other cases, we conclude that the general rule in this forum is that when there is a contractual relationship between the parties, the plaintiff may invoke the six-year statute of limitations if he suffers a pecuniary loss because of conduct that may be reasonably regarded as a breach of contract. *See,* CPLR § 213, Practice Commentaries for Contract Actions.

Centel argues two major points before concluding that neither CPLR §§ 213(2) nor 213(7) apply to Trustee's claim for breach of fiduciary duty. First, concerning

§ 213(7), Centel relies on a recent decision where a District Court in this district refused to apply the six-year statute of limitations to a trustee's action for breach of fiduciary duty and corporate waste. *Purves v. ICM Artists, Ltd.*, 119 B.R. 407, 411 (S.D.N.Y.1990). In *Purves*, Judge Stewart held that the three-year statute of limitations period mandated by CPLR § 214(2) governs a bankruptcy trustee's claims brought under New York Business Corporation Law ("BCL") §§ 717, 719, and 720 for breach of fiduciary duty, common law fraud, and corporate waste, respectively. *Purves*, 119 B.R. at 411. Based on its interpretation of the § 213(7), the district court concluded that "§ 213(7) applies to shareholder derivative suits and does not apply to claims against directors brought by a trustee in bankruptcy." *Id.* We note that the Court did not, however, discuss the established case law holding that § 214(2) does not apply to statutes that codified existing common law causes of action.

■ Second, regarding whether CPLR § 213(2) applies to Trustee's first claim for relief, Centel cites CPLR § 214(4) to support its position that breach of fiduciary duty sounds in tort rather than contract and is thereby time-barred. Section 214(4) provides that "an action to recover damages for an injury to property" must be commenced "within three years." Centel also cites several New York decisions holding that an action for damages based on breach of fiduciary duty is governed by the three-year limitation period where the action is based on neither fraud nor breach of contract. *See Posner v. Merrill Lynch, Pierce, Fenner & Smith*, 469 F.Supp. 972 (S.D.N.Y.1979). *Accord, e.g., Burghart v. Landau*, No. 82 Civ. 2181 (S.D.N.Y. Feb. 6, 1984) (LEXIS Gen. Fed. Library, Dist. File). In sum, Centel argues that Trustee's first claim for relief is not timely under the three-year tort statute of limitations applicable to claims for injury to property. Although there is some authority for Centel's position,[9] we agree with Trustee that the six-year limitations period applies here.

---

**9.** We are not bound by stare decisis to follow Judge Stewart's opinion because it emanates

■ Unfortunately, New York law does not provide any single limitations period for breach of fiduciary duty claims.[10] The choice of the appropriate period ordinarily depends on the substantive remedy sought by the plaintiff. *Leonard v. Santa Fe Industries, Inc.,* 70 N.Y.2d 262, 266, 519 N.Y.S.2d 801, 803, 514 N.E.2d 113, 115 (1987). In its determination of what limitations period applies, a Court should "look for the reality and essence of the action and not its mere name." *Tighe v. Ginsberg,* 146 A.D.2d 268, 271, 540 N.Y.S.2d 99, 100 (4th Dept.1989). Similarly, the nature of the offense, not the means of asserting it, controls for statute of limitations purposes. *European American Bank v. Cain,* 79 A.D.2d 158, 162, 436 N.Y.S.2d 318, 321 (2nd Dept.1981). Although conflicting authority exists,[11] numerous New York Courts have applied the six-year limitations periods to breach of fiduciary duty claims. *See Zola v. Gordon,* 685 F.Supp. 354, 374 (S.D.N.Y.1988); *Dolmetta v. Uintah Nat'l Corp.,* 712 F.2d 15, 19 (2nd Cir. 1983); and *Public Serv. Co. v. Chase Manhattan Bank, N.A.,* 577 F.Supp. 92, 102, 109 (S.D.N.Y.1983). We also note that numerous New York Courts have held that the statute of limitations for breach of fiduciary duty does not commence running until the plaintiff has actual or constructive knowledge of the breach. *Chase Manhattan Bank, N.A., supra,* 577 F.Supp. at 109; *Dumbadze v. Lignante,* 244 N.Y. 1, 3–4, 6–9, 154 N.E. 645, 645, 646–47 (1926); *Wood v. Young,* 141 N.Y. 211, 218, 36 N.E. 193, 194 (1894) (dictum); *Montgomery Ward & Co. v. Weber,* 7 Misc.2d 465, 466, 162 N.Y.S.2d 744, 746 (Sup.Ct.1957); N.Y. CPLR § 206(a)(1); 36 N.Y. Jur, *Limitations and Laches* § 82 (Lawyers Cooperative Publishing Co. 1964).

■ We hold that Trustee's first count alleging breach of fiduciary duty is timely under both CPLR §§ 213(2) and 213(7). Centel's argument that CPLR § 213(7) applies only to shareholders' derivative actions does not overcome the statute's plain language that it encompasses actions both "by" and "on behalf of" a corporation. The principles of statutory construction provide that a statute plain on its face must be enforced according to its terms. *In re Burke Mountain Recreation Inc.,* 64 B.R. 799, 802 (Bkrtcy.D.Vt.1986).

Centel's argument that CPLR § 213(7) is construed narrowly in cases involving a bankruptcy trustee is not convincing. It is a basic principle of bankruptcy law that title to a debtor's causes of action vest in the trustee at the time of his or her appointment. In the matter *sub judice,* Trustee was empowered to bring actions that the corporation itself could have initiated in its own name but for the filing of a bankruptcy petition. *Hastings v. H.M. Byllesby & Co., supra; Bush v. Masiello,* 55 F.R.D. 72 (1972).

We are also unsympathetic to Centel's argument that § 213(7) is limited to shareholder derivative actions. In contrast to Centel's argument, a derivative action, by definition, is a lawsuit on behalf of a corporation. Derivative actions are only appropriate where an action by the corporation is not feasible, *i.e.,* where the corporation fails and refuses to take appropriate action for its own protection. Based on the plain language of § 213(7), the same statute of limitations must apply when a corporation asserts its own cause of action and when a shareholder asserts the same cause of action on the corporation's behalf. Consist-

---

from a single-district Judge in a multi-Judge district.

**10.** Unfortunately, difficulties are continually experienced because of the manner in which the CPLR defines some statutes of limitation in terms of liability, *e.g.,* "action upon a contractual obligation" (CPLR 213(2)), and others in terms of the type of damage done, *e.g.,* injury to property (CPLR 214(4)). This problem commonly arises, as in the matter *sub judice,* where the plaintiff has suffered property damage resulting collaterally from a breach of contract,

and where the three-year limitations period has expired. *See,* CPLR § 213, Commentaries C213:2.

**11.** Several Courts have held that fiduciary duty claims are governed by a three year limitations period. *See Loengard v. Santa Fe Industries, Inc.,* 573 F.Supp. 1355, 1359 (S.D.N.Y.1983), and citations therein. *Loengard* based its holding on CPLR 214(4), which provides a three year limitations period for "injuries to property."

ent with this interpretation, the statute encompasses both actions "by" and those "on behalf of" a corporation.[12]

■ Centel's reliance on *Purves, supra* is also less than persuasive. *Purves* held that the three-year statute of limitations period mandated by CPLR § 214(2) governs a bankruptcy trustee's claims pursuant to BCL §§ 717, 719, and 720. CPLR § 214(2) prescribes a three-year period for action to "recover upon liability, penalty, or forfeiture created or imposed by statute." N.Y.Civ.Prac.Law § 214(2) (McKinney 1972). Unlike *Purves*, however, Trustee here does not plead BCL injuries as a theory of recovery. Even if Trustee had done so, New York Courts have consistently held that CPLR § 214(2) does not apply to statutes that merely codify existing common law causes of action. Only new statutory causes of action fall under the limits imposed in § 214(2). *Aetna Life & Cas. Co. v. Nelson*, 67 N.Y.2d 169, 501 N.Y.S.2d 313, 492 N.E.2d 386 (1986); *State v. Cortelle Corp.*, 38 N.Y.2d 83, 378 N.Y.S.2d 654, 341 N.E.2d 223 (1975)[13], *accord, Loengard v. Santa Fe Industries, Inc.*, 573 F.Supp. 1355 (S.D.N.Y.1983); *State v. Danny's Franchise Systems, Inc.*, 131 A.D.2d 746, 517 N.Y.S.2d 157 (1987).

The distinction between common law and statutory law causes of action is significant in cases involving statute of limitation issues. As previously stated, New York Courts have held that § 214(2) does not limit causes of action that existed at common law before the statute was enacted. *State v. Cortelle Corp., Loengard v. Santa Fe Industries, Inc., Danny's Franchise Systems, Inc., supra.* A cause of action for breach of fiduciary duty existed long before New York adopted the General Corporation Law of 1929, the predecessor of

today's BCL. *See Cumberland Coal & Iron Co. v. Sherman*, 30 Barb. 553 (1859); *Hun v. Cary*, 82 N.Y. 65, 37 Am.Rep. 546, 59 How.Prac. 439 (1880). Similarly, where a statute merely provides a remedy for a preexisting liability, § 214(2) does not apply. *See, Id.; State Farm Mut. Auto. Ins. Co. v. Regional Transit Serv., Inc.*, 79 A.D.2d 858, 434 N.Y.S.2d 486, 487 (4th Dep't 1980); *Hornblower & Weeks–Hemphill, Noyes v. Burchfield*, 366 F.Supp. 1364, 1367 (S.D.N.Y.1973). Given this authority, it is reasonable to conclude that even if Trustee had alleged BCL causes of action, Trustee would not be restricted by the three-year limitations period set out in § 214(2) because the BCL, in relevant part, has simply codified existing common law causes of action. Unfortunately, *Purves* does not discuss the common law origins of the BCL claims in light of the analysis above. We therefore believe that *Purves* relies on a mistaken analysis of § 214(2).

■ Based on the briefs of the parties and our own research of New York law, we believe it appropriate to apply the six-year limitations period to Trustee's claim for breach of fiduciary duty. We choose to err, if at all, on the side of caution in deference to a full hearing and trial on the issues presented. We agree with other circuits that uncertainty regarding the applicability of a statutes of limitation should be settled in favor of the longer limitations period. *FDIC v. Former Officers and Directors of Metro. Bank*, 884 F.2d 1304 (9th Cir.1989), cert. denied sub nom., *Lee v. Federal Deposit Ins. Corp.*, —— U.S. ——, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990); *Hughes v. Reed*, 46 F.2d 435 (10th Cir. 1931). Accordingly, Centel's motion to dismiss the first claim for relief is denied.

---

12. *See, e.g.*, 1 Weinstein, Korn & Miller, *New York Civil Practice, Limitations of Time*, ¶ 213.19 at 2–164; 2 Carmody Wait 2d, *Limitation of Actions*, ¶ 13.115; 3A Fletcher, *Corporations, Directors, Other Officers and Agents*, § 1304; and 14 N.Y.Jur.2d, *Business Relationships*, § 624.

13. In *State of New York v. Cortelle Corp.*, the Court of Appeals considered whether an action by the Attorney General under the BCL was

barred by the three-year statute of limitations. The Court held that the action was not barred because the BCL "did not 'make' unlawful the alleged fraudulent practices, but only provided standing in the Attorney General *to seek redress and additional remedies for recognized wrongs which pre-existed the statutes.*" (Emphasis ours). *State of New York v. Cortelle Corp.*, 38 N.Y.2d 83, 85, 378 N.Y.S.2d 654, 341 N.E.2d 223 (1975).

We next consider Centel's motion to dismiss Trustee's second claim for corporate waste. In many respects, the allegation of corporate waste is based on the same facts that comprise the first claim for breach of fiduciary duty. Trustee alleges that "by virtue of its dominant and controlling role in the management of Argo, Centel owed a duty to Argo and its shareholders not to waste the corporate assets of Argo." Specifically, the second claim is founded on Centel's alleged support for the establishment of a Monitoring Committee to review Argo's expenses, the assumption by Centel of Argo's billing and the transfer of the billing function to Microtel, and the alleged transfer of confidential materials from Argo to Microtel. These activities allegedly occurred between June and December 1986. Trustee filed his complaint on March 7, 1991.

■ The cause of action for corporate waste has its origins in the common law of agency. Fiduciaries such as officers and directors are essentially agents of the corporation. A director or officer who intentionally or negligently facilitates the waste or mismanagement of corporate assets is liable for damages to the principal that flow from his conduct. Corporate waste as a cause of action is based on each fiduciary's duty of highest loyalty to the corporation. Waste is therefore similar to a claim for breach of fiduciary duty. *See,* 18B Am.Jur.2d § 1687.

■ According to New York case law, a corporate director has a fiduciary duty to manage corporate assets in a reasonable way, and he is liable for any waste or misappropriation of corporate property. *Superintendent of Insurance of the State of New York v. Freedman,* 443 F.Supp. 628, 638 (S.D.N.Y.1977), *citing, Rapoport v. Schneider,* 29 N.Y.2d 396, 328 N.Y.S.2d 431, 278 N.E.2d 642 (1972). New York has embodied these concepts of fiduciary duty and corporate waste in § 720 of the BCL. Section 720 states that an "action may be brought against one or more directors of a corporation to procure a judgment" for violation of fiduciary duties. It should be noted, however, that the statutory embodiment of fiduciary principles in § 720 is explicitly an extension of the common law and not a limit on it. *See,* BCL § 720(c); *Rapoport v. Schneider, supra.*

■ The common law liability of a fiduciary for corporate waste is not a new development in New York. In *Gray v. Fuller,* 17 App.Div. 29, 34, 44 N.Y.S. 883, 886 (4th Dep't 1897), the Court stated that corporate waste was a well-established cause of action. In a recent case, a New York Court maintained waste of corporate assets as a cause of action where the complaint alleged conflict of interest that led to a corporation's bankruptcy. *Amfesco Industries, Inc. v. Greenblatt,* 172 A.D.2d 261, 568 N.Y.S.2d 593 (1991). *Amfesco* held that the official secured creditors committee had standing to assert a claim on behalf of the debtor corporation because the "cause of action did not only [sic] belong to stockholders and creditors." Similarly, we believe that Trustee is entitled to bring the present action under CPLR § 213(7) as the entity possessing all the equitable and legal claims of the debtor corporation. Consistent with our interpretation of the first claim for relief, we hold that Trustee's second claim for corporate waste is timely under CPLR §§ 213(2) and 213(7). Accordingly, Centel's motion to dismiss the second claim for relief is denied.

■ In the third claim, Trustee alleges that Centel breached the Management Services Agreement ("the Agreement") it entered into with Argo. The Agreement provided in part:

The [Centel] Employees, while acting pursuant to this Agreement, will, through the lines of organization, report to and be responsible to the Board of Directors of Argo Communications Corporation. Centel acknowledges that, while acting pursuant to this Agreement, the [Centel] Employees will not be subject to direction or control by the Board of Directors or officers of Centel. Centel also acknowledges that the [Centel] Employees will be free to perform such services in the best interests of Argo regardless of the effect upon Centel.

Generally, Trustee claims that Centel breached the Agreement by failing to honor its obligation to act in Argo's best interests.

Accepting Trustee's facts as true, the contract was executed on or about October 4, 1984, and expired by its terms one year later on October 4, 1985. Trustee commenced this action on March 7, 1991. Therefore, Trustee's action is time-barred to the extent that it arose prior to March 7, 1985.

Centel moves to dismiss Trustee's third claim on several grounds. First, Centel argues that the third claim for breach of contract is time-barred by the limitations period set out in CPLR § 213(2). Section 213(2) provides that "an action upon a contractual obligation or liability, express or implied" must be commenced within six years of the time it accrues. Second, Centel moves to dismiss the third count for failure to state a cause of action under New York law. Centel argues that the complaint fails to plead the necessary facts to show that Centel's breaches of the Agreement resulted in damages to Argo.

We find that Trustee's complaint states a cause of action for breach of contract. In his own words, Trustee alleges:

In sum, Centel implemented the Management Services Agreement in a capricious fashion, by freely rotating its own people in and out of the top management positions at Argo as it alone saw fit. The resultant inability of Argo to install and develop an independent management team on which it could rely for effective long-term leadership was an important element of Centel's dominance of Argo's business to the detriment of Argo, but in furtherance of Centel's own self interest.

In essence, Trustee claims that Centel had a contractual duty to act in Argo's best management interests. In addition, Trustee incorporates all other facts alleged in the complaint in the claim for breach of contract. These facts include alleged misrepresentations, reliance, breach, and resulting damages to Argo. We conclude that Trustee has alleged sufficient facts to state a cause of action for breach of contract stemming from the Management Services Agreement.

Contrary to the motion before us, Centel in large part argues the merits of Trustee's contract claim rather than its legal sufficiency under F.R.Civ.P. 12(b)(6). Here, as in all contract actions, Trustee bears the burden of proving, by a preponderance of the evidence, that breach occurred and that the plaintiff suffered damages. *Launois v. Midland–Ross Corp.*, 751 F.Supp. 452 (S.D.N.Y.1990). Whether or not Trustee has met this final burden, however, is not currently before this Court. In this motion to dismiss, our review is limited to a determination of whether Trustee has alleged facts in support of the claim for relief. It is now axiomatic that a complaint need only provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." 2A J. Moore, *Moore's Federal Practice*, ¶ 8.13 at 8–62 (2d ed. 1987). Trustee's third claim for relief meets this minimal requirement. Centel's motion to dismiss count three for failure to state a claim is denied.

We also disagree with Centel's assertions regarding the fact that Trustee did not put the entire contract in the pleadings. Trustee was not required to attach a copy of the contract to the complaint. The elements of a claim for breach of contract need not be pled separately; all that is necessary is a short and plain statement of the claim showing that the pleader is entitled to relief. Courts in this jurisdiction follow the general rule that in a breach of contract action, the plaintiff must plead provisions of the contract upon which the claim is based, but the plaintiff is not required to attach a copy of the contract or plead its terms verbatim. *Griffin Brothers, Inc. v. Yatto*, 68 A.D.2d 1009, 415 N.Y.S.2d 114 (1979); *Mellencamp v. Riva Music Ltd.*, 698 F.Supp. 1154 (S.D.N.Y.1988).

We are in accord, however, with Centel's characterization that CPLR 213(2) renders Trustee's contract claim untimely in part. Centel argues that if it breached the agreement, the breach oc-

curred in the seven month period beginning at the date six years before the petition was filed and ending at the date the contract expired. Trustee's contract claim is time-barred under CPLR 213(2) to the extent that it accrued more than six years earlier than the petition date, *i.e.*, before March 7, 1985. Also, Trustee cannot claim breach of the Agreement following the Agreement's expiration on October 4, 1985. Therefore, Centel is potentially liable only for breach occurring between March 7, 1985 and October 4, 1985.

We note, however, that Trustee has implicitly alleged continuous violations of the Agreement extending into this seven month period. Although Centel rotated its own employees in and out of Argo's management before the operative period began, these individuals allegedly violated the terms of the Agreement during the relevant period. According to the complaint, these Centel employees did not act in Argo's best interests throughout the term of the Agreement. The general rule applicable to contract actions is that the six-year statute of limitations begins to run when a contract is breached or when one party omits the performance of a contractual obligation. CPLR § 213(2); *Airco Alloys Division v. Niagara Mohawk Power*, 76 A.D.2d 68, 430 N.Y.S.2d 179 (1980). Where a contract provides, however, for continuing performance over a period of time, each individual breach may begin the running of the statute anew such that accrual occurs continuously. We therefore conclude that Trustee's third claim for breach of contract alleges sufficient facts to state a cause of action that accrued during the seven-month period between March 7, 1985 and October 4, 1985.

In count four, Trustee generally alleges that Centel fraudulently misrepresented that it would act in Argo's best interests. Specifically, Trustee alleges that Centel misrepresented its intention to preserve the independence of Argo's management, support the proposed merger among Argo, Microtel, and LCI, and retain a qualified, independent firm to appraise the relative values of the merging entities. Centel moves to dismiss Trustee's fourth claim for failure to state a cause of action for fraud and for failure to plead fraud with particularity as required under F.R.Civ.P. 9(b). Centel also moves to dismiss Trustee's fraud claim for untimeliness under the applicable New York statute of limitations.

A cause of action lies in common law fraud when there has been a representation of material existing fact, falsity, scienter, deception, and injury. *In re Domestic Fuel Corp.*, 79 B.R. 184 (Bkrtcy.S.D.N.Y.1987); *Adler & Shaykin v. Wachner*, 721 F.Supp. 472 (S.D.N.Y.1988). Similarly, the elements of fraudulent concealment are: (1) a relationship between the parties that creates a duty to disclose; (2) knowledge of the material facts by the party bound to make such disclosure; (3) nondisclosure; (4) scienter; (5) reliance; and, (6) damages. *In re Domestic Fuel Corp.*, 79 B.R. 184, 193. At trial, each element must be proved by clear and convincing evidence. *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 971 (2d Cir.1987). Our review of a motion to dismiss is much less demanding and merely requires that the plaintiff allege facts that may reasonably be interpreted as fraudulent in nature. A claim will survive a motion to dismiss unless the plaintiff can prove no set of facts entitling the plaintiff to relief.

Trustee alleges the following facts as the basis for the fraud claim. First, Trustee asserts that Centel knew its representations concerning the proposed merger were false when made, or that Centel knowingly concealed from Argo the fact that they ceased to be true at some point after they were made. These representations included, *inter alia*, that Centel would: (a) honor, preserve and refrain from interfering with Argo's independent management; (b) act in Argo's best interests in connection with its role in Argo's management regardless of the effect on Centel's own interests; and, (c) use its best efforts to help Argo grow and prosper as a company and take certain actions toward that objective, namely direct a significant amount of Centel's telecommunications traffic to Argo, active-

ly seek additional investors and other sources of financing for Argo, and undertake a joint marketing program with Argo. Second, Trustee claims that Centel represented to Argo that the proposed merger was in Argo's best interests, that it was necessary for Argo to take drastic and far-reaching cost-reduction measures in anticipation of the merger, and that Centel would support, vote for, and use its best efforts to effectuate the merger. Trustee also alleges that Centel's representations were material with respect to the corporate well-being of Argo, that Argo reasonably relied on the representations to its detriment, and that Argo incurred substantial damages as a result of Centel's misrepresentations.

Centel argues that Trustee's fraud claim is insufficient on two grounds. First, Centel states that Trustee failed to plead fraud with particularity. According to the defendant, the complaint does not satisfy the pleading requirements of Bankruptcy Rule 7009 and F.R.Civ.P. 9(b) because it does not allege facts that show that Centel acted with fraudulent intent with the requisite specificity. Second, Centel argues that Trustee failed to allege facts specifying the manner in which Argo relied on Centel's alleged misrepresentations, and that Trustee failed to plead the time, place, and manner certain of Centel's alleged misrepresentations.

Rule 9(b) is satisfied if the complaint sets forth: (1) what statements were made in what documents or oral misrepresentations or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or, in the case of not making) the same; (3) the context of such statements and the manner in which they misled the plaintiffs; and, (4) what the defendants obtained as a consequence of the fraud. *Ruff v. Genesis Holding Corp.*, 728 F.Supp. 225, 227 (S.D.N.Y.1990), citing, *Stevens v. Equi-dyne Extractive Industries 1980, Petro/Coal Program 1*, 694 F.Supp. 1057, 1061 (S.D.N.Y.1988).

In determining whether fraud has been pled with sufficient particularity, a Court must read the complaint generously, and draw all inferences in favor of the plaintiff. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). Furthermore, Rule 9(b) must be read in conjunction with Rule 8(a), which requires plaintiffs to plead only a short, plain statement of the grounds upon which they are entitled to relief. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 n. 20 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). The serious nature of fraud [14], however, requires that the plaintiff plead more than conclusory allegations of fraudulent conduct to satisfy Rule 9(b).

Trustee bases the scienter element of the fraud claim on the following facts. First, Trustee alleges that Centel had substantial investments in Argo as well as in other companies that were involved in the proposed merger. Second, Centel was in a position to influence Argo's business decisions, evidenced by Centel's right to appoint two of Argo's seven directors. From these facts, read in a light most favorable to the plaintiff, we can infer that Centel's conflict of interest provided it with a motive to subvert Argo's interests in furtherance of Centel's substantial investment in Microtel and LCI, and at the same time, to make ongoing misrepresentations to Argo concerning its intentions. We therefore conclude that Trustee has adequately alleged fraudulent intent.

The facts set out in the complaint also satisfy the reliance element. For example, Trustee states that Argo transferred its billing to what had been a rival entity, disclosed confidential customer lists, and otherwise acted to its deteriment in reliance on the representations of Centel

---

**14.** As noted above, Rule 9(b) provides that "in all averments of fraud ... the circumstances constituting the fraud ... shall be stated with particularity." The purposes of this rule are threefold: to provide the defendant with fair notice of the claims against him; to protect a defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and, to reduce the number of strike suits. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987).

that the merger would be approved. Simply put, Argo took drastic cost-reduction actions that, but for the proposed merger, it would never have considered reasonable under foreseeable circumstances. Trustee has therefore adequately pled reliance. Whether or not said reliance was reasonable, however, is a question of fact for the trial court. The law is clear that the reasonableness of a party's reliance is an issue of fact which cannot be decided on a motion to dismiss. *Whitbread (US) Holdings, Inc. v. Baron Philippe de Rothschild,* 630 F.Supp. 972, 978 (S.D.N.Y.1986).

Centel also argues that the complaint does not adequately show that Argo suffered damages as a result of the alleged misrepresentations. We disagree. The entire complaint is based on Centel's initial support and last-minute abandonment of the merger, and Argo's subsequent financial ruin following the merger's rejection. Assuming Trustee's facts as true, Centel orchestrated Argo's restructuring and streamlining. When Centel voted against the merger, Argo was no longer in a position to function as an independent entity. Argo's petition for relief in this Court shows the extent of the damages that flowed from the alleged fraud.

Contrary to the defendant's position, we believe that Trustee has sastisfied the basic "what, when, where, how, and why" requirements of F.R.Civ.P. 9(b). Although the complaint is sometimes vague as to the speaker and location of an alleged representation,[15] it does provide sufficient notice to the defendant concerning the origins of the fraud claim. These include representations made in April and early May, 1986 that Centel proposed a merger among LCI, Microtel, and Argo; representations made in June, 1986 that Centel's continued financial support of Argo was conditioned on Argo's support of the merger; and the fact that Centel's representatives on the Argo board of directors voted in favor of a preliminary approval of the merger on July 16, 1986 before the merger's ultimate rejection several months later. Trustee also quotes

numerous instances when Centel stated its intent to vote in favor of the merger, complete with names and dates.[16] In sum, Trustee outlines the events leading up to the merger vote on December 19, 1986, including the transfer of confidential documents such as customer lists. These events infer not only Centel's motives, but also what Centel hoped to gain from its misrepresentations, *i.e.,* customer lists and increased market share.

■ We hold that Trustee's allegations are sufficient to state a cause of action for common law fraud. The complaint supplies as much detail of the alleged fraud as can be expected before discovery in a case where the defendant is alleged to have concealed its motives. While F.R.Civ.P. 9(b) does require that the "circumstances constituting fraud shall be stated with particularity," it also provides that "malice, intent, knowledge, and other conditions of mind of a person may be averred generally." We believe that Trustee's allegations of scienter meet the above standard. F.R.Civ.P. 9(b) recognizes that requiring specificity in pleading state of mind is unworkable. *See* 5 Wright & Miller, *Federal Practice and Procedure,* § 1301. Since conditions of the mind are peculiarly within the defendant's knowledge, it would be impossible for the plaintiff to plead them specifically. *Frankel v. Slotkin,* 705 F.Supp. 105, 107 (E.D.N.Y.1989); *accord,* 2A Moore's *Federal Practice,* ¶ 9.03[1]. The lenient standard for pleading scienter will be satisfied even if the plaintiff does not allege specific facts that demonstrate the defendant's motive for committing fraud, so long as the plaintiff identifies circumstances indicating conscious behavior by the defendants. *Griffin v. McNiff,* 744 F.Supp. 1237, 1246 (S.D.N.Y.1990).

■ Defendant also argues that the fraud claim is untimely under New York law. New York law provides a two-tier period of limitations applicable to fraud claims. To be timely, a claim of fraud

---

**15.** Generally speaking, however, Trustee's complaint is very specific. Trustee quotes numerous deposition transcripts, letters, etc.

**16.** *See,* Trustee's Complaint, para. 65–8.

must be brought "within six years of the fraud itself", or "within two years from the time plaintiff discovered or could have discovered the fraud with the exercise of reasonable diligence"—whichever is longer. N.Y. CPLR §§ 213(8) and 203(f); *Marathon Enterprises, Inc. v. Feinberg*, 595 F.Supp. 368, 371 (S.D.N.Y.1984).

Under the clear language of the New York statute, Trustee's fraud claim is untimely to the extent that the fraud occurred prior to March 7, 1985—six years before Trustee filed the present adversary proceeding on March 7, 1991. Representations made after March 7, 1985, however, fall within the limitations period and are therefore timely. Trustee alleges sufficient facts, such as the representations of Centel before the negative merger vote in late 1986 and numerous statements that Centel would act in Argo's best interests, for this Court to conclude on a motion to dismiss that fraudulent acts may have occurred between the March 7, 1985 and the date this adversary proceeding was filed six years later. As stated earlier, Trustee alleges continuous misrepresentations over the course of Argo's relationship with Centel. We therefore conclude that Trustee's fourth claim for relief is timely under CPLR 213(8) six-year limitations period.

Trustee's fifth claim for relief alleges negligent misrepresentation. As the basis for this claim, Trustee alleges the same facts cited in the fourth cause of action for fraudulent misrepresentation. Centel moves to dismiss the fifth claim as time-barred under New York's three-year statute of limitations for negligence actions. Trustee filed his complaint on March 7, 1991, more than four years after the merger vote on December 19, 1986.

 In order to recover on a theory of negligent misrepresentation, a plaintiff must establish that, because of some special relationship with the defendant, the law imposes on that defendant a duty to use reasonable care to impart correct information, that the information is false or incorrect, and that the plaintiff reasonably relied on the information given. *Pappas v. Harrow Stores*, 140 A.D.2d 501, 528 N.Y.S.2d 404 (1988); *International Products Co. Erie R.R. Co.*, 244 N.Y. 331, 155 N.E. 662 (1927). Trustee has adequately stated all of these elements in his complaint.

Centel asserts in its brief that two New York courts have held that CPLR § 214(4) governs negligent misrepresentation claims.[17] First, Centel cites *Hernandez v. Empire Mutual Insurance Co.*, 121 A.D.2d 259, 261, 503 N.Y.S.2d 379, 380 (1st Dep't 1986) as the leading authority on this issue. In *Hernandez*, plaintiff Hernandez fell off of a bar stool and broke his leg while he was a customer at the L & M Bar and Grill. The plaintiff brought suit seven months later by substituted service on the owner. One week prior to the accident, however, L & M's owner died. The defendant's attorney continued to represent the deceased owner for the next four years as if he were alive. Based on the misrepresentations of the defendant's counsel, the plaintiff's attorney was not aware of the owner's death until after the statute of limitations on the negligence claim had expired. The plaintiff, thus, did not have the opportunity to serve the administratrix of the estate within the time allowed by law. About three years after his discovery of the restaurant owner's death, the plaintiff filed a two count complaint alleging negligence and fraud.

On appeal, the Supreme Court of New York, Appellate Division, granted summary judgment on behalf of the defendants and dismissed the complaint in its entirety.[18]

---

**17.** CPLR § 214(4) provides that "an action to recover damages for injury to property" must be commenced "within three years". Section 25–b of New York's General Construction Law defines "injury to property" as "an actionable act, whereby the estate of another is lessened, other than a personal injury, or the breach of a contract." N.Y.General Construction Law § 25–b (McKinney Supp.1991).

**18.** The Court did not consider the issue of whether the defendants were equitably estopped from asserting the statute of limitations defense because the issue was not properly reserved for appellate review. *See Bile v. Bile*, 95 A.D.2d 719, 464 N.Y.S.2d 127 (1st Dep't 1983).

According to the Court, the negligence claim expired in three years under CPLR § 214(5). The Court stated:

> [T]he cause of action for misrepresentation is also time-barred under the theory of fraud, or the six-year general limitations period set forth in CPLR § 213(1). An action for fraud must be brought within six years of the complained-of misrepresentations (CPLR §§ 213(8)), or two years after the person claiming injuries has learned of the fraud, whichever is later (CPLR § 203(f)).

According to our reading of this case, the Court applies both the fraud (CPLR § 213(8)) and the catch-all six-year limitations period provided in CPLR § 213(1) to misrepresentation actions. We understand this to include both negligent and fraudulent misrepresentation actions. *See, Ambassador Insurance Co. v. Euclid Services, Inc., infra.* *Hernandez* does not articulate why §§ 213(1) and 213(8) apply to misrepresentation actions; because the Court did not have to decide whether to use a three- or six-year statute both claims were untimely even under the longer statutory period. Centel's interpretation of *Hernandez* is, therefore, unconvincing.

Centel also cites *Credit Alliance Corp. v. Arthur Anderson & Co.*, 101 A.D.2d 231, 476 N.Y.S.2d 539 (1st Dep't 1984), *rev'd on other grounds*, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985) for the same conclusion that negligent misrepresentation claims are governed by a three-year statute of limitations. In *Credit Alliance*, a credit company sued an accounting firm for negligent preparation of a third party's financial statements. The Supreme Court, Appellate Division, held that the accounting firm was liable for foreseeable injury to the credit company resulting from reasonable reliance on the professional opinions and statements, even though the accounting firm was not in privity with the credit company. Regarding the applicable limitations period, the Court opined that the action was one for negligence, rather than professional malpractice, and upheld the lower Court's decision regarding when the cause of action accrued. Significantly, the Appellate Division did not discuss limitations periods in terms of whether the three or six-year statute applied to that particular case of negligently prepared financial statements. *Credit Alliance*, therefore, offers no assistance in our determination of what limitations period applies to the present motion to dismiss.

*Credit Alliance* also differs from the present case because it does not involve allegations of fraudulent misrepresentation. As stated in *Ambassador Insurance Co. v. Euclid Services, Inc.*, No. 80 Civ. 1235 (S.D.N.Y. May 24, 1984) (1984 WESTLAW 341), when negligent representation essentially sounds in fraud, then the six-year statute of limitations should apply. In the matter *sub judice*, Trustee alleges both fraudulent and negligent misrepresentation. Both claims are based on facts that, read in a light most favorable to the plaintiff, allege fraudulent conduct.

Based on our review of this issue and the authorities cited in Centel's brief, we conclude that New York Courts have applied the six-year limitations periods to negligent misrepresentation actions. In *Ambassador Insurance Co. v. Euclid Services, Inc., supra*, the District Court held that the six-year limitations period for fraud actions also governs negligent misrepresentation claims. *See,* CPLR § 213(8). The Court reasoned that because such a claim "depends on the act of misrepresentation, be it negligent or intentional," the action essentially sounds in fraud. *Ambassador Insurance Co.*, 1984 WL 341, at 4. The District Court looked to the "essence of the complaint" before reaching its conclusion that CPLR § 213(8) was the applicable statute of limitations. *Id.*

In a more recent decision, the Appellate Division held that the six-year limitations period applies to negligent misrepresentation actions. *Milin Pharmacy, Inc. v. Cash Register Systems, Inc.*, 570 N.Y.S.2d 341 (1991). The Court based its decision on CPLR 213(1), which provides a six-year limitations period for actions in "which no limitation is specifically prescribed by law." *Id.*

Based on our review of the above authorities, we hold that Trustee's fifth claim is timely under the six-year statute of limitations provided in CPLR § 213(8). Our holding, however, is limited to situations where negligent misrepresentation is alleged according to facts that also state a cause of action for fraud. As the District Court noted in *Ambassador Insurance Co. v. Euclid Services, Inc.,* note 7, *supra,* were the charge of negligent misrepresentation viewed strictly in terms of negligence, the claim would be time-barred by the three-year limitations period provided in CPLR § 214(4). The Court, however, applied the fraud limitations period based on the complaint's essence in fraud. In the matter *sub judice,* Trustee's negligent misrepresentation claim stands in the shadow of fraud. We choose to follow the decision of the District Court as the best available, but not controlling, precedent on this issue. Centel's motion to dismiss the fifth cause of action is therefore denied.

 In the sixth claim for relief, Trustee alleges that Centel acted "wilfully, knowingly, maliciously, wantonly, with gross-negligence and with a conscious and/or disregard for the rights or Argo." As a result of this allegedly egregious conduct, Trustee asks for punitive damages [19] in an amount not less than $300 million. Centel moves to dismiss the sixth claim for failure to state a claim for which relief may be granted.

Centel argues that the punitive damages claim should be dismissed because there is no independent cause of action for punitive damages in New York. Centel cites several cases, including *Steinberg v. Monasch,* 85 A.D.2d 403, 405, 448 N.Y.S.2d 200, 202 (1st Dep't 1982) and *Crames v. Wonderknit Corp.,* 92 A.D.2d 857, 459 N.Y.S.2d 1015 (2d Dep't 1983), that reach the before mentioned conclusion. While we agree with Centel that there is no independent cause of action for punitive damages in New York, and that Trustee's separate

cause of action for punitive damages is inartfully drafted, we do not end our inquiry there.

In *Bunker v. Bunker,* 73 A.D.2d 530, 422 N.Y.S.2d 403 (1st Dep't 1979), the Appellate Division dismissed the fourth cause of action of the complaint, which incorporated the third cause of action for fraud and deceit and purported only to plead a cause of action for punitive damages. According to the Court, "such a claim for [punitive] damages constitutes merely an element of the single total claim for damages on the underlying causes of action." *Id.* Therefore, the Court concluded that "the complaint is deemed to demand punitive damages, which are recoverable only if the proof establishes there was such gross, wanton, or willful fraud or other morally culpable conduct to a degree sufficient to justify an award of punitive damages." *Id., quoting Borkowski v. Borkowski,* 39 N.Y.2d 982, 983, 387 N.Y.S.2d 233, 355 N.E.2d 287 (1976).

Here, as in *Bunker,* the claim for punitive damages is improperly pleaded as a separate cause of action, incorporating the prior causes of action. We find, however, consistent with other Courts, that the complaint is deemed to demand punitive damages on the underlying causes of action. As was held in *Seitzman v. Hudson River Associates,* 143 Misc.2d 1068, 542 N.Y.S.2d 104 (1989) and *Borkowski, supra,* we conclude that the complaint contains sufficient allegations of Centel's willful and malicious conduct to sustain the demand for punitive damages.

 We note that the subject of punitive damages is a matter for the Judge's charge at trial, dependent upon the circumstances shown in the proof. *Seitzman, supra, citing, Aetna Cas. & Sur. Co. v. Hambly,* 51 A.D.2d 790, 382 N.Y.S.2d 95 (2d Dep't 1976). In the present proceeding, Trustee has alleged conduct in such a manner that the issue of punitive damages

**19.** According to a recent decision, "punitive damages" are only available where fraud is "aimed at the public generally, is gross and involves high moral culpability, not merely an isolated transaction incident to the conduct of a legitimate business." *Fischer v. Yaakov,* —— A.D.2d ——, 575 N.Y.S.2d 310 (1991), *quoting, Walker v. Sheldon,* 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961).

should be presented to the trier of fact. *Loughry v. Lincoln First Bank, N.A.,* 67 N.Y.2d 369, 379–80, 502 N.Y.S.2d 965, 494 N.E.2d 70 (1986); *Nardelli v. Stamberg,* 44 N.Y.2d 500, 503, 406 N.Y.S.2d 443, 377 N.E.2d 975 (1978). If Trustee can prevail on the fraud claim, Trustee may be entitled to punitive damages. The fraud claim's ad damnum clause is, sua sponte, amended to assert the punitive damages claim. *Goldstein v. Winard,* 569 N.Y.S.2d 425 (1991); *Beck v. General Tire and Rubber Co.,* 98 A.D.2d 756, 469 N.Y.S.2d 785, *motion for leave to appeal dismissed,* 63 N.Y.2d 769, 480 N.Y.S.2d 1024, 469 N.E.2d 102 (1984). Centel's motion to dismiss the sixth claim for relief is therefore denied.

■ Centel next moves for a more definite statement under F.R.Civ.P. 12(e) [20] regarding Trustee's request for equitable subordination.[21] F.R.Civ.P. 12(e) states that a motion for more definite statement may be granted if "a pleading ... is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading...." Whether to grant a motion for a more definite statement is a matter within the discretion of the trial court. *Delta Educ., Inc. v. Langlois,* 719 F.Supp. 42 (D.N.H.1989), *citing,* 5 Wright & Miller, *Federal Practice and Procedure,* § 1377 (Supp.1987); *United States v. Metro Dev. Corp.,* 61 F.R.D. 83, 85 (N.D.Ga. 1973).

Trustee alleges the following facts in the seventh claim for relief as the basis for equitably subordinating Centel's claims relative to other creditors. Under the March 14, 1983 Stock Subscription Agreement between Centel, Argo, and others, Centel agreed to make a $10 million capital contribution to Argo. In return, Centel would receive Argo stock of equal value. Centel contributed $6.4 million in cash and $3.6 million in leased telecommunications equipment. Argo made its lease payments in Argo stock, rather than cash, during most of the lease term.

■ Trustee concludes that the $3.6 million lease should be recharacterized as a capital contribution [22] because Centel furnished equipment to Argo and took back common stock in return.[23] Centel's lease

**20.** As made applicable in this Court by Bankruptcy Rule 7012.

**21.** Section 510(c)(1) of the Bankruptcy Code allows us to subordinate a claim under principles of equity. 11 U.S.C. § 510(c)(1). Examples of inequitable acts leading to subordination of claims include breach of fiduciary duty, fraud, gross undercapitalization, failure to observe corporate formalities, and contributions to capital. *See, In re Vermont Toy Works, Inc.,* 82 B.R. 258 (Bkrtcy.D.Vt.1987), for a comprehensive discussion of the history and elements of equitable subordination.

**22.** We note that "determining the equitable subordination issue prior to determining whether the advance is a lease or a capital contribution is similar to placing the cart before the horse." A Florida Bankruptcy Court described this issue in the following manner:

"If it is determined that the claim is a capital contribution and not a debt then equitable subordination would not have any relevance. Subordination is appropriate when the claimant is undeniably a creditor, but for reasons of equity should be relegated to a rank inferior to that or general creditors. Herzog and Zweibel, The Equitable Subordination of Claims in Bankruptcy, 15 Vand.L.R. 83 (1961). To be a creditor in bankruptcy the debtor must owe a debt to the claimant. The issue is whether the claim is an indebtedness or whether it is a proprietary interest. If it is determined that the claim is a proprietary interest the claim will be subordinated, not equitably subordinated, as a matter of course since 'the essential nature of a capital interest is a fund contributed to meet the obligations of a business and which is to be repaid only after all other obligations have been satisfied.' Herzog and Zweibel, supra, at 94." *Diasonics v. Ingalls,* 121 B.R. 626, 630 (Bkrtcy. N.D.Fla.1990).

**23.** Trustee also alleges the following facts in the seventh claim for relief:

"116. Shortly after the commencement of Argo's bankruptcy case, the Trustee entered into negotiations with third parties for the sale of Argo's existing telecommunications and other assets. Due to Centel's claim to title to the Equipment, the Trustee was severely hindered in attempting to consummate transactions involving Argo assets that included or might include the Equipment. Accordingly, the Trustee and Centel entered into a Stipulation, subsequently approved by and entered as an Order of this Court, whereby the Trustee essentially purchased certain of the Equipment (primarily power supplies) located at two of Argo's sites from Centel for approximately $80,000 with full reservation of, inter alia, his antecedent rights to title in the Equipment.

thus supplied operating capital to Argo. According to Trustee, the effect of the lease was the same as if Centel had simply purchased stock.[24] Trustee requests, in light of Centel's fundamentally unfair[25] treatment of Argo, that we eliminate or equitably subordinate Centel's claims against Argo's estate.[26]

■ Centel's motion for more definite statement concerns only the claim for equitable subordination. Centel argues that Trustee's equitable subordination claim is vague and ambiguous because it fails to allege which defendant committed which acts. Specifically, Centel criticizes Trustee's practice of referring to Centel Corporation and three of its wholly-owned subsidiaries as "Centel."[27] Centel concludes that a more definite statement setting forth the acts that each defendant allegedly committed is required before Centel can adequately defend the equitable subordination claim.[28] We disagree.

■ Under the Federal Rules of Civil Procedure, pleadings are intended simply to place a defendant on notice of the basic nature of the plaintiff's case and to give the plaintiff a general idea of what defenses he or she may face. The primary burden of information exchange and issue delineation is to be borne through the utilization of the discovery process. See, 5 Wright and Miller, *Federal Practice and Procedure*, § 1375 (1969) (citations omitted). In view of the liberal discovery rules and procedures available to all parties, a motion for more definite statement is generally discouraged. *In re Gas Reclamation, Inc. Securities Litigation*, 659 F.Supp. 493 (S.D.N.Y.1987). A motion for more definite statement is designed to strike at unintelligibility in a pleading, not just a claimed lack of detail. *In re Bunker Exploration Co.*, 42 B.R. 297 (Bkrtcy. W.D.Okla.1984); *Stanton v. Manufacturers Hanover Trust Co.*, 388 F.Supp. 1171 (S.D.N.Y.1975). A Rule 12(e) motion is not a substitute for discovery.

We agree with Trustee that Centel can obtain the information they request through ordinary discovery procedures.[29] To hold otherwise would contradict the rationales for notice pleading, as well as re-

---

117. Subsequently, the Trustee sold certain of the Debtor's telecommunications equipment to Chestnut Ridge Communications (a/k/a Safecom and hereinafter "CRC"). This sale included certain of the Equipment and was approved by order of the Court. In connection with this sale, the Trustee was required to give CRC a credit in the amount of $142,000.00 against the total purchase price because of Centel's claim to title of the Equipment. Due to Centel's claim of title to the Equipment, the Trustee's realization from the sale of assets to CRC was reduced by $142,000.

Based on the above facts, Trustee requests that Centel return the $80,000 that Trustee advanced to Centel. In addition, Trustee requests that Centel reimburse the estate for the $142,000 paid to CRC. Trustee also requests compensatory and punitive damages arising from its equitable subordination claim."

24. A "lease" may be considered a contribution to capital like a loan of funds where no payments or demand for payments are made or expected except as the "lessee" generates earnings. *In re B & L Laboratories, Inc.*, 62 B.R. 494, 509 (Bkrtcy.M.D.Tenn.1986); *In re Labelle Industries*, 44 B.R. 760, 763 (Bkrtcy.D.R.I.1984).

25. Trustee incorporates all previous allegations of the complaint in his equitable subordination claim.

26. Trustee requests additional remedies. See, Trustee's Complaint, ¶ 118, p. 57.

27. See, note 2, *supra*. Centel Corporation's three wholly-owned subsidiaries are Centel Network Company, Centel Credit Company, and Centel Management Services Company. According to Centel's brief, Argo's relationship with Centel Network Company formed the basis of the first, second, fourth, fifth, and sixth claims for relief. Memorandum of Defendants in Support of Their Motion To Dismiss the Complaint or for Partial Summary Judgment, page 1, note 1. We assume that Trustee's claim for equitable subordination also rests on this same relationship with Centel Network Company because the allegations of inequitable conduct mirror those stated earlier in the complaint.

28. According to Centel, "only one defendant has filed a proof of claim...." Memorandum of Defendants in Support of Their Motion to Dismiss the Complaint or for Partial Summary Judgment, page 60.

29. Trustee states in his brief that the Stock Subscription Agreement contains the $10 million capital contribution. According to Trustee, this Agreement, of which the Master Equipment Lease Agreement was a part, was signed by Centel Network Company.

ward and encourage complex corporate structures involving wholly-owned subsidiaries. Although at least one Court in this district has granted a 12(e) motion where the plaintiff did not name individual subsidiaries as defendants [30], we believe that the more practical solution here lies in the discovery process.

In the matter sub judice, Trustee alleges breach of fiduciary duty, fraud, and breach of contract all in the context of a relationship between a relatively large corporation and a relatively small corporation. Trustee alleges numerous acts of concealment and self-dealing as the basis of much of the complaint. These allegations form the basis of Trustee's equitable subordination claim. As such, discovery will play a large role in fleshing out these allegations. The omission of the subsidiary's name does not inhibit responsive pleading given the facts of the present matter. Centel's motion for more definite statement is therefore denied.

■ Finally, we examine Centel's motion for partial summary judgment regarding the first, fourth, and fifth claims for relief. Defendant disputes Trustee's allegation that Centel's misrepresentations concerning the merger were the proximate cause of the merger's failure and the resulting damages to Argo. Centel essentially argues that even if it had voted in favor of the merger (as a Microtel shareholder), the merger still would have failed. In support of its position, Centel submits an affidavit of Richard J. Rappaport ("Rappaport Affidavit"), an attorney for Centel.

In response to Centel's motion for summary judgment, Trustee argues that even assuming everything in the Rappaport Affidavit is true, the merger vote would have stood at 49.6169% for the merger, and 50.-3831% against it. Trustee further alleges that Centel did not use its influence to win approval for the merger, thus violating its obligation to act in the best interests of Argo as provided in the August 22, 1986 Agreement and Plan of Merger. Trustee infers that Centel's influence as a significant shareholder may have affected other shareholders' votes.

■ To prevail on a motion for summary judgment, the movant must satisfy the criteria set forth in F.R.Civ.P. 56,[31] as made applicable to this Court under F.R.Bkrtcy.P. Rule 7056. The primary purpose for granting a summary judgment motion is to avoid unnecessary trials where no genuine issue of material fact is in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In remanding the case in *Anderson, supra,* so the correct standards under Rule 56 could be applied, the United States Supreme Court stated the following:

> (T)he judge must ask himself (herself) not whether he (she) thinks the evidence unmistakenly favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is (evidence) upon which a jury can proceed to find a verdict for the party producing it....'

*Anderson,* 106 S.Ct. at 2512 (parentheticals supplied for clarity).

■ The function of this Court when considering a motion for summary judgment is not to resolve disputed issues of fact but only to determine whether there

**30.** *Bower v. Weisman,* 639 F.Supp. 532 (S.D.N.Y.1986).

**31.** Rule 56 provides in part: "[T]he judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Eastman Machine Company, Inc. v. United States,* 841 F.2d 469 (2d Cir.1988).

is a genuine issue to be resolved. *Anderson, supra,* at 2509–11; *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986). Moreover, in determining whether a genuine issue has been raised, a Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), *cited in Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir. 1987). Therefore, not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them. *Donahue, citing, Schwabenbauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1981); *accord, Anderson v. Liberty Lobby, Inc., supra.*

■■■ The party moving for summary judgment has the burden of clearly establishing that no relevant facts are in dispute. *Celotex Corp., supra,* 106 S.Ct. at 2548; *Anderson, supra,* 106 S.Ct. at 2512; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Speculation and conjecture will not suffice. Only after the moving party has met its initial burden must the opposing party set forth specific facts showing that there is a genuine issue for trial and that the disputed fact is material. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir. 1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

■■■ At this point our analysis of summary judgment law need go no further. We believe that Centel has not met its initial burden of showing that no material facts are in dispute. In a motion for summary judgment, the nonmovant only has the burden to put forth probative evidence in addition to the pleadings after the moving party has satisfied its initial burden that no relevant facts are in dispute. *Celotex Corp., supra,* 106 S.Ct. at 2548.

While Centel competently argues the merits of its position, it does not completely refute the factual assertions put forth by Trustee in the complaint. Several key facts have not been controverted, including

Centel's duties to support the merger and to act in Argo's best interests. Moreover, the simple fact that Centel did not vote for the merger after repeatedly representing that it would provides a strong inference that Centel acted either negligently or fraudulently. Contrary to the conclusions of the Rappaport Affidavit, this case involves more than stock ownership percentages. While the attached memoranda provide some insight into the structures of the entities involved, the Affidavit itself is essentially conclusory and therefore inadequate to support the movant's burden. *Maldonado v. Ramirez,* 757 F.2d 48 (3rd Cir.1985).

When construing all inferences in favor of the nonmovant, we cannot say that there is no genuine issue of material fact to be resolved. Centel's motion for partial summary judgment pertaining to the first, fourth, and fifth claims is therefore denied.

### CONCLUSION

For the foregoing reasons, Centel's motions to dismiss and for partial summary judgment are denied. We also deny Centel's motion for a more definite statement.

Counsel for Argo is to settle an order.