OPINION OF THE COURT
Harold Baer, Jr., J.
In this action, plaintiffs seek both compensatory and punitive damages resulting from defendant’s alleged wrongful acts *1069 in connection with a contract for the sale to plaintiffs of a cooperative apartment. Plaintiffs are two physicians who entered into said contract with the defendant, the sponsor and selling agent of the cooperative apartment, on October 16, 1985. Plaintiffs sought to purchase the apartment for use as a medical office. Plaintiffs allege that when one of the partners in Hudson River Associates learned that plaintiff Peter Seitzman treats patients with Acquired Immune Deficiency Syndrome (AIDS), defendant refused to take the necessary steps to facilitate the changeover of the apartment from a residence to a medical office, as required under the contract.
Plaintiff’s amended complaint sets forth three causes of action. The first asserts a claim for breach of contract, the second a claim for discrimination in violation of New York’s Human Rights Law (Executive Law § 296), and the third seeks punitive damages as a consequence of the acts underlying the first and second causes of action and as a result of defendant’s alleged willful and malicious acts. The jury rendered a verdict in favor of plaintiffs on the first two causes of action and determined that with respect to the second cause of action, i.e., the Human Rights Law violation, plaintiffs were entitled to punitive damages. Following the verdict, a "mini” trial to assist the jury to determine the amount of punitive damages was held in accordance with the teachings of Rupert v Sellers (48 AD2d 265 [4th Dept 1975]; see also, Dufresne v Duemler, 108 AD2d 1102 [3d Dept 1985]; Chilvers v New York Mag. Co., 114 Misc 2d 996 [Sup Ct, NY County 1982]).
The defendant moved separately to dismiss that portion of plaintiffs’ claim which sought punitive damages and did so on more than one occasion.
We turn first to the defendant’s motion that relies on the proposition that punitive damages may not be the subject matter of a separate cause of action (Bunker v Bunker, 73 AD2d 530 [1st Dept 1979]). In Bunker, the Appellate Division dismissed the fourth cause of action of the complaint which incorporated the third cause of action for fraud and deceit and purported only to plead a cause of action for punitive damages. The court’s reasoning is compelling: "Such a claim for [punitive] damages constitutes merely an element of the single total claim for damages on the underlying causes of action” (supra, at 530). The court explained further: "The complaint is deemed to demand punitive damages, which are recoverable only if the proof establishes there was 'such gross, wanton, or willful fraud or other morally culpable conduct to a degree *1070 sufficient to justify an award of punitive damages.’ ” (Supra, at 530, quoting Borkowski v Borkowski, 39 NY2d 982, 983 [1976] [emphasis added]; accord, Bikowicz v Nedco Pharmacy, 100 AD2d 702 [3d Dept 1984].) In the instant case, as in Bunker, the claim for punitive damages is improperly pleaded, as a separate cause of action, incorporating the prior causes of action. However, also as in Bunker, we find that the complaint is deemed to demand punitive damages on the underlying causes of action. In essence, while inartfully written, the amended complaint contains sufficient allegations of defendant’s willful and malicious conduct in the context of its violation of the Executive Law so that while the demand for punitive damages ought not have been alleged in this fashion, it should be sustained.
Further support for this view is found in a landlord-tenant dispute, Green v Fischbein Olivieri Rozenholc & Badillo (119 AD2d 345 [1st Dept 1986]). There, the First Department reviewed the denial of defendant’s cross motion to dismiss the complaint. Of particular relevance is the court’s determination that the eleventh cause of action, which sought damages for intentional infliction of mental and emotional distress, was not only sufficiently alleged, but that plaintiff was entitled to claim punitive damages on that cause of action. Here, just like in Green, the demand for punitive damages was not specifically asserted in the second cause of action for violation of the Human Rights Law. Nonetheless, the court found: "Although not specifically asserted in this cause of action, a punitive damage claim, read separately, may be included in that plaintiff has, in this cause of action, incorporated all prior paragraphs of the complaint. The fact that some of the paragraphs are included in causes of action which have been properly dismissed does not eliminate them from the complaint. The complaint is deemed to demand punitive damages recoverable if the proof establishes that there was, as alleged, 'such gross, wanton, or willful fraud or other morally culpable conduct to a degree sufficient to justify an award of punitive damages.’ (Borkowski v Borkowski, 39 NY2d 982, 983.) The form of action is not dispositive” (supra, at 351; emphasis added).
Perhaps more importantly, the defendant had ample notice of the allegations supporting plaintiffs’ demand for punitive damages; and yet waited years before making its motion. During those years, discovery proceeded and defendant’s counsel had the opportunity and took advantage of the opportunity to probe the underpinnings of plaintiffs’ allegations. A motion *1071 to dismiss now must be denied as too little and too late. Moreover, no showing was made of prejudice or surprise.
Finally, the "subject of punitive damages is a matter for the Judge’s charge at the trial, dependent upon the circumstances shown in the proof’ (Aetna Cas. & Sur. Co. v Hambly, 51 AD2d 790 [2d Dept 1976]). Here, the circumstances shown in the proof were sufficient to require that the issue be presented to the jury. That motion is denied.
Defendant’s second motion urging that punitive damages may not be awarded for a violation of the Human Rights Law is more challenging. Executive Law §296 (5) (b) (1) and (2) provide in relevant part:
"It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, or managing agent of, or other person having the right of ownership or possession of or the right to sell, rent or lease, land or commercial space:
"(1) To refuse to sell, rent, lease or otherwise deny to or withhold from any person or group of persons land or commercial space because of the race, creed, color, national origin, sex, age, or disability or marital status of such person or persons.
"(2) To discriminate against any person because of his race, creed, color, national origin, sex, age, or disability or marital status in the terms, conditions or privileges of the sale, rental or lease of any such land or commercial space; or in the furnishing of facilities or services in connection therewith.”
The law provides a litigant with an option — he may bring his claim before the Human Rights Commission or the court. These litigants chose the courthouse pursuant to Executive Law § 297 (9), which provides in pertinent part that: "Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate”.
Clearly, each forum has a different role and those roles, to an extent, are mutually exclusive — as was pointed out by the Court of Appeals in Murphy v American Home Prods. Corp. (58 NY2d 293, 307 [1983]): "The procedures, practices, and remedies, indeed the entire perspective of administrative intervention under the Human Rights Law, differ radically from the traditional course of judicial adjudication.”
In Murphy (supra), a discharged employee commenced an action for abusive discharge, prima facie tort, intentional *1072 infliction of emotional distress, breach of contract and age discrimination. The Supreme Court dismissed all causes of action except for abusive discharge, and the Appellate Division modified by dismissing all causes of action. The Court of Appeals modified by reinstating the fifth cause of action for age discrimination brought pursuant to Executive Law § 297 (9). The court held that a three-year Statute of Limitations governs actions brought pursuant to section 297 (9), rather than the one-year period, as prescribed in section 297 (5), which governs complaints filed with the Division of Human Rights.
Upon appeal of the granting of defendant’s motion to strike plaintiffs jury demand after remand from the Court of Appeals, the First Department by Justice Ellerin held that plaintiff was entitled to a jury trial on his sole remaining claim for violation of the Human Rights Law.
Justice Ellerin’s decision in Murphy v American Home Prods. Corp. (136 AD2d 229, 232-233 [1st Dept 1988]) teaches:
"It is significant that the only specific remedy mentioned [in the statute] is that of 'damages’ without qualification. In distinction, subdivision (4) (c) of the statute, which deals with the relief available when the aggrieved party elects to proceed administratively before the State Division of Human Rights, expressly details the five remedies which the Division may provide. * * * The only 'damage’ remedy available before the Division is limited to an 'awarding of compensatory damages to the person aggrieved’ (Executive Law § 297 [4] [c] [iii]).
"An over-all review of the statute indicates that the statutory scheme is designed to provide an aggrieved person with a choice between alternative avenues of redress, each of which is distinctly different in character and designed to serve different purposes. On the one hand, there is the administrative forum where appropriate relief can be fashioned for aggrieved persons primarily interested in eliminating the discriminatory conduct in both a general and individual sense and, on the other hand, there exists a legal cause of action for individual vindication primarily by way of an award of money.”
The clincher may be that the court in Murphy (supra) not only sustained plaintiffs sole remaining cause of action for discrimination in violation of Executive Law § 296, but also the demand for both punitive and compensatory damages.
As defendant points out punitive damages are not available *1073 in actions brought before the Human Rights Division. (See, Cullen v Nassau County Civ. Serv. Commn., 53 NY2d 492 [1981]; Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights, 35 NY2d 143 [1974].) However, Murphy (supra) appears to open the door in New York, at least a crack, for an aggrieved party suing in court to allege and prove punitive damages in an appropriate case. This court shares that view. Although we have uncovered no New York cases, the Federal court, interpreting this State’s Human Rights Law, suggests that punitive damages may be available. "The plaintiff may also be entitled to punitive damages under the New York law” (O’Brien v King World Prods., 669 F Supp 639, 642 [SD NY 1987]; Selbst v Touche Ross & Co., 587 F Supp 1015 [SD NY 1984]).
Further, in Smith v Wade (461 US 30, 51 [1983]), the United States Supreme Court, in discussing an analogous Federal civil rights statute, held: "As for punitive damages, however, in the absence of any persuasive argument to the contrary based on the policies of § 1983, we are content to adopt the policy judgment of the common law — that reckless or callous disregard for the plaintiff’s rights, as well as intentional violations of federal law, should be sufficient to trigger a jury’s consideration of the appropriateness of punitive damages.” Although the decisions under Federal discrimination statutes are not determinative here, they provide valuable guidance (see, People v New York City Tr. Auth., 59 NY2d 343 [1983]).
When we juxtapose the holding in Smith (supra) with the avowed purposes of the Human Rights Law, as stated in Koerner v State of New York, Pilgrim Psychiatric Center (62 NY2d 442, 447-448 [1984]), we find additional support for our position: "[T]he Legislature, in enacting the Human Rights Law, specifically found that 'the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate education, training, housing or health care, not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants’ (Executive Law, § 290, subd 3). Clearly, the elimination of discrimination in the provision of basic opportunities is the predominant purpose of this legislation”. This view is further buttressed by the legislative re *1074 quirement that "[t]he provisions of this article shall be construed liberally for the accomplishment of the purposes thereof.” (Executive Law § 300.)
Having chosen this tribunal, punitive damages under appropriate circumstances are available pursuant to Executive Law § 296 (5) (b) and as a consequence, this motion too is denied.